IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| INTERSTATE PACKAGING COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 3:11-cv-00589 |
| | ) | Judge Nixon |
| v. | ) | Magistrate Judge Knowles |
| | ) | |
| CENTURY INDEMNITY COMPANY, et al., | ) | JURY DEMAND |
| | ) | |
| Defendants. | ) | |

## ORDER

Pending before the Court is Defendants Great American Insurance Company's ("GAIC") and Great American Insurance Company of New York ("GANY"), f/k/a American National Fire Insurance Company's ("Defendants") Motion for Summary Judgment ("Motion") (Doc. No. 65), filed with a Memorandum in Support (Doc. No. 66), a supporting affidavit (Doc. No. 67), and a Statement of Undisputed Material Facts (Doc. No. 68). Plaintiff Interstate Packaging Company ("Interstate") filed a Response in Opposition (Doc. No. 86), a Response to Defendants' Statement of Undisputed Material Facts (Doc. No. 79), and several depositions (Doc. Nos. 80-85). Defendants then filed a Reply. (Doc. No. 87.) For the reasons stated herein, Defendants' Motion is **GRANTED**.

I. BACKGROUND

    A. *Factual Background*[1]

        1. Underlying Litigation

Interstate manufactures packaging, labels, bags, and pouches for customers in the food and beverage, health and beauty, textile, household product, and pet product industries in

---

[1] All facts in this section are undisputed and are taken from Plaintiff's Response to Defendants' Statement of Undisputed Material Facts (Doc. No. 79) unless otherwise noted.

1

Tennessee. (Doc. No. 1-1 at 3.) On October 28, 2009, Natural Resources Defense Council, Inc., Beatrice Holt, and Sheila Holt-Orsted ("NRDC Plaintiffs") filed suit against Interstate in this District ("NRDC Lawsuit"). The Complaint in the NRDC lawsuit ("NRDC Complaint") alleges that Interstate disposed of waste containing trichloroethylene ("TCE") and perchloroethylene ("PCE") at a landfill owned and operated by the City of Dickson, Tennessee in the 1970s and 1980s.

The NRDC Plaintiffs claim that the TCE and PCE contaminated their drinking well and the subsurface of their property. They further claim that members of the Holt family have experienced serious health problems that they believe are related to their long-term exposure to the contaminated water supply. The NRDC Plaintiffs sought an order requiring various defendants including Interstate to investigate the extent of contamination, remediate the present contamination, and abate future contamination. The NRDC Plaintiffs subsequently settled their claims, and the NRDC Lawsuit was dismissed in November of 2011.

2. Insurance Policies

In 1982, Interstate was issued an insurance policy numbered XO 3-82-71-32 that provided comprehensive general liability insurance for the period of May 1, 1982 through May 1, 1983 ("GLI Policy"). The parties dispute whether GANY or GAIC issued the GLI Policy, and Defendants deny that GAIC issued any general liability policy to Interstate at any time.

Paragraph 13 of the GLI Policy states that the insurer "will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . 'bodily injury' or 'property damage' . . . to which this insurance applies, caused by an 'occurrence.'" The GLI Policy defines "bodily injury" as "bodily injury, sickness or disease

2

sustained by any person which occurs during the policy period, including death at any time resulting therefrom." It defines "property damage" as:

> (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an "occurrence" during the "policy period."

Exclusion F of the GLI Policy bars coverage for "'bodily injury' or 'property damage' arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water." However, Exclusion F does not apply if "such discharge, dispersal, release or escape is sudden and accidental."

GANY issued to Interstate an umbrella insurance policy numbered PRO 3-70-22-36 that provided coverage for the period of May 1, 1982 through May 1, 1983 ("Umbrella Policy"). Under the Umbrella Policy, GANY agreed to "pay on behalf of the insured the ultimate net loss in excess of the underlying limit or retained limit which the insured shall become legally obligated to pay . . . for damages because of . . . 'personal injury' or 'property damage' . . . caused by or arising out of an 'occurrence' happening anywhere." "Personal injury" is defined as "bodily injury, sickness, disease or disability, including death at any time arising therefrom" and also includes "false arrest, detention or imprisonment, malicious prosecution, wrongful entry or eviction." The Umbrella Policy defines the term "property damage" identically to the GLI Policy. Exclusion G of the Umbrella Policy provides the same bar to coverage as Exclusion F of the GLI Policy, and similarly does not apply if "such discharge, dispersal, release or escape is sudden and accidental."

3

*B. Procedural History*

Interstate filed the instant lawsuit in the Chancery Court of Dickson County on May 18, 2011, against several insurance companies. (Doc. No. 1-1.) Defendants removed the action to this Court on June 17, 2011, on the grounds of diversity jurisdiction. (Doc. No. 1.) Relevant to the current Motion, Interstate alleges that GANY and GAIC wrongfully denied insurance coverage for the damages alleged in the NRDC Lawsuit. (*Id.*) Interstate seeks a declaratory judgment that coverage for the NRDC Lawsuit exists under the policies that Defendants issued to it and that Defendants are liable for the policy limits, along with damages for their failure to defend and indemnify. (*Id.*)

Defendants filed a Motion for Summary Judgment on December 5, 2011 (Doc. No. 65), with a Memorandum in Support (Doc. No. 66), an affidavit (Doc. No. 67), and a Statement of Undisputed Material Facts (Doc. No. 68). Interstate filed a Response in Opposition on February 6, 2012 (Doc. No. 86), with a Response to Defendants' Statement of Undisputed Material Facts (Doc. No. 79) and six deposition transcripts (Doc. Nos. 80-85). Defendants filed a Reply on February 20, 2012. (Doc. No. 87.)

## II. LEGAL STANDARD

Summary judgment is rendered when "there is no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must demonstrate that the non-moving party has failed to establish a necessary element of that party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment will be granted if "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore*, 93 F.3d 230, 233 (6th Cir. 1996). The movant has the initial burden of informing the district court of the basis of the

summary judgment motion and identifying portions of the record which lack a genuine issue of material fact to support the non-movant's case. *See Celotex*, 477 U.S. at 323.

The non-moving party may not rest solely on the allegations in the complaint, but must delineate specific evidence that shows there is a genuine issue for trial. *See id.* at 324. A "mere possibility" of a factual dispute is not sufficient to withstand a properly supported motion for summary judgment. *Baird v. NHP Mill Creek Apartments*, 94 F. App'x 328, 330-31 (6th Cir. 2004) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). A dispute about a material fact is genuine if a reasonable factfinder could find for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A party asserting or denying that a fact is genuinely disputed may support its position by (1) citing to particular parts of materials in the record, (2) showing that the materials cited by the opposing party do not establish the absence or presence of a genuine dispute, or (3) showing that an adverse party cannot produce admissible evidence to support a fact. Fed. R. Civ. P. 56(c)(1).

All reasonable inferences are to be drawn in favor of the non-moving party and the evidence of the non-movant is to be believed. *Anderson*, 477 U.S. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . on a motion for summary judgment." *Id.* If the court determines that a reasonable factfinder could not find for the non-moving party, summary judgment must be granted. *See Lexington-South Elkhorn Water Dist.*, 93 F.3d at 233.

### III. ANALYSIS

Defendants' Motion asserts that they are entitled to summary judgment because (1) the policies that were issued to Interstate are subject to exclusions that preclude coverage for the

5

allegations in the NRDC Lawsuit, therefore failing to trigger the duty to defend; and (2) GAIC did not issue any general liability insurance policy to Interstate. (Doc. No. 66 at 2.)

   A. *Liability Under the Policies*

Defendants assert that Exclusion F of the GLI Policy and Exclusion G of the Umbrella Policy bar coverage for any bodily injury, personal injury, or property damage caused by Interstate's alleged disposal of PCE or TCE, because the NRDC Plaintiffs' alleged damages arise out of the "discharge, dispersal, release or escape" of waste materials into or upon land. (*Id.* at 7.) Although Interstate discusses the cases cited by Defendants in its Response, it does not appear to dispute that Exclusions F and G apply to the claims asserted in the NRDC Lawsuit or make arguments accordingly. Rather, Interstate focuses on whether the "sudden and accidental" exception to the exclusionary provisions applies. The Court therefore turns to this issue.

Once an insurer carries its burden of identifying an applicable exclusion, the burden shifts to the insured to demonstrate that the claim fits within an exception to the exclusion. *Standard Fire Ins. Co. v. Chester O'Donley & Assocs., Inc.*, 972 S.W.2d 1, 8 (Tenn. Ct. App. 1998) (citation omitted). Defendants assert that the exception to Exclusions F and G—that the Exclusions do not apply "if such discharge, dispersal, release or escape is sudden and accidental"—does not apply to the circumstances of this case because Interstate's alleged disposal of wastes containing PCE and TCE occurred over several years and was not, therefore, "sudden and accidental." (*Id.* at 9.) Interstate responds that some of the allegations in the NRDC Complaint fall within the "sudden and accidental" exception (Doc. No. 86 at 17), and also that certain facts developed through discovery in the NRDC Lawsuit reveal two discrete "sudden and accidental" events giving rise to Interstate's liability (*id.* at 12). Accordingly, Interstate argues

6

that the exception to Exclusions F and G applies and Defendants are therefore obligated to provide coverage for the NRDC Lawsuit. (*Id.*)

1. <u>Duty to Defend</u>

The Tennessee Supreme Court summarized Tennessee's law on an insurer's duty to defend in *Travelers Indemnity Co. of America v. Moore & Associates, Inc.*, 216 S.W.3d 302 (Tenn. 2007):

> [W]hether a duty to defend arises depends solely on the allegations contained in the underlying complaint. Accordingly, the insurer has a duty to defend when the underlying complaint alleges damages that are within the risk covered by the insurance contract and for which there is a potential basis for recovery. The duty to defend arises if even one of the allegations is covered by the policy. The duty to defend is broader than the duty to indemnify because the duty to defend is based on the facts alleged, while the duty to indemnify is based upon the facts found by the trier of fact. Any doubt as to whether the claimant has stated a cause of action within the coverage of the policy is resolved in favor of the insured.

*Id.* at 305 (internal citations omitted). Thus, the facts that were developed through discovery in the NRDC Lawsuit are irrelevant to the duty to defend under the GLI and Umbrella Policies, and the Court must focus on the NRDC Complaint in order to determine Defendants' entitlement to summary judgment. *See id.*

This Court addressed an exception to a pollution exclusion that was virtually identical to the exception to Exclusions F and G in *U.S. Fidelity & Guaranty Co. v. Murray Ohio Manufacturing Co.*, 693 F. Supp. 617 (M.D. Tenn. 1998), *aff'd*, 875 F.2d 868 (6th Cir. 1989). The Court determined that "sudden" is not an ambiguous term, and that its "common sense meaning in everyday parlance . . . combines both the idea of 'unexpected,' and the idea of 'quick.'" *Id.* at 621. The Court later defined the phrase "sudden and accidental" as "occurring both unexpectedly and relatively quickly in time." *Id.* The Court then applied its construction of the terms to determine that the insurer in that case did not have a duty to defend the insured

7

company because the waste leakage at issue was alleged to have occurred over a six-year period and could not be deemed "sudden," even if the insured had not intended to cause the pollution. *Id.* at 622.

The Tennessee Court of Appeals subsequently cited *Murray* in evaluating nearly identical facts. *Drexel Chem. Co. v. Bituminous Ins. Co.*, 933 S.W.2d 471, 476 (Tenn. Ct. App. 1996). The Court of Appeals agreed that the phrase "sudden and accidental" is not ambiguous. *Id.* at 477. The Court of Appeals adopted the temporal definition of "sudden," defining it as "'abrupt—the opposite of 'gradual,' 'routine,' or 'continuous,'" and also defined "accidental" as "unexpected or unintended." *Id.* The Court of Appeals emphasized that "sudden" and "accidental" are independent requirements that both must be met in order for the exception to apply. *Id.* The Court of Appeals thus constructed "the proper rule to be applied":

> When discharges of pollution occur on a regular, ongoing basis over a lengthy period of time as a normal part of an operation, such discharges are not "sudden" within the meaning of the pollution exclusion clause. However, where the damage is caused by a "few discrete polluting events, each of which was short in duration and accidental in nature," the discharge will fall within the "sudden and accidental" exception to the pollution exclusion and, therefore, the insurer will be liable for coverage under the policy.

*Id.* (quoting *Grant-Southern Iron & Metal Co. v. CNA Ins. Co.*, 905 F.2d 954, 957 (6th Cir. 1990)).

The NRDC Complaint contains detailed factual allegations against Interstate, concluding generally that "Interstate disposed of PCE- and/or TCE-contaminated waste at the Landfill." (Doc. No. 68-2 ¶ 71.) The more specific allegations of Interstate's conduct in disposing of its contaminated waste include, *inter alia*:

> 59. Interstate disposed of spent PCE and/or PCE-contaminated waste at the . . . Dickson Landfill in 1983 and/or previous years.

8

Case 3:11-cv-00589 Document 88 Filed 03/14/12 Page 8 of 13 PageID #: 2485

61. Prior to May 1, 1984, Interstate had disposed of some waste solvents by means other than paying a company to haul the waste away to dispose of it at that company's liability.

65. Interstate disposed of still bottoms contaminated with PCE and/or TCE at the Landfill prior to April 9, 1985.

Interstate draws the Court's attention to the NRDC Complaint's later allegations that it may have disposed of certain wastes containing TCE or PCE in its general trash, arguing that because "the Complaint in the NRDC Lawsuit alleges that trash containing TCE or PCE may have been inadvertently shipped to the Dickson County Landfill, the Complaint itself brings, or potentially brings, the claims against Interstate within the 'sudden and accidental' exception to the Policies' exclusions." (Doc. No. 86 at 17.) The specific portion of the NRDC Complaint to which Interstate refers alleges the following:

66. . . . On information and belief, Interstate disposed of some or all of the TCE it used, with its other trash, and the Landfill.
67. In the 1980s, Interstate paid certain of its employees to dispose of waste at the Landfill. At least one of these employee [sic] disposed of drums and buckets at the Landfill in 1984.
68. During at least the 1980s, Dickson County Solid Waste Management serviced one or more waste dumpsters at the Interstate facility in White Bluff, Tennessee. During the 1980s, Dickson County Solid Waste Management disposed of waste at the Landfill.
69. At least until the early-1980s, it was common for many companies to dispose of industrial chemicals, including spent solvents, with their general trash. Companies disposed of spent solvents with their general trash because this disposal method was, at the time, cost effective. The economic factors that led many companies to dispose of industrial chemicals, including spent solvents, with their trash applied to Interstate.
70. . . . Interstate disposed of trash, including some industrial waste, at the Landfill in the 1980s. On information and belief, Interstate disposed of its trash, including some industrial waste, at the Landfill in the 1970s through the 1990s.

(Doc. No. 68-2 ¶¶ 66-70.)

Upon review of the NRDC Complaint, the Court finds that Interstate has not met its burden of proving that the allegations of the NRDC Complaint fall within the "sudden and

9

accidental" exception to Exclusions F and G. Rather, the NRDC Complaint alleges deliberate and continuous disposal of contaminated waste as part of Interstate's normal operations. Specifically, the Court disagrees with Interstate's characterization of the allegations regarding its general trash disposal as including "inadvertent" shipment of contaminated waste to the landfill. Taken in context, the allegations instead contend that Interstate intentionally disposed of the waste in its general trash for economic reasons. Further, even if the Court were to accept that the contaminated waste was "accidentally" transported to the landfill, an inference which stretches the intended favorability of the duty to defend standard, neither these nor any other allegations in the NRDC Complaint allege that the contamination was "sudden" as that term is defined in case law.

Interstate conflates, to some degree, "sudden" and "accidental" into a single standard of inadvertence. This interpretation has been repeatedly rejected by courts, including this Court. *See Murray*, 693 F. Supp. at 621; *Drexel Chem. Co.*, 933 S.W.2d at 477. Instead, polluting events must meet both requirements independently to fall within the exception. *Drexel Chem. Co.*, 933 S.W.2d at 477. In *Murray*, this Court enumerated events such as a breakdown in machinery or a precipitous leak as "sudden" events. 693 F. Supp. at 622. The events alleged in the NRDC Complaint are not of the same temporal character as these examples, and are more like occurrences "on a regular, ongoing basis over a lengthy period of time as a normal part of an operation." *Drexel Chem. Co.*, 933 S.W.2d at 477. The Court therefore concludes that the exception to Exclusions F and G apply, and that the Exclusions consequently bar coverage for the claims as alleged in the NRDC Complaint. Thus, the Court finds that no duty to defend arises out of either the GLI Policy or the Umbrella Policy.

10

Case 3:11-cv-00589   Document 88   Filed 03/14/12   Page 10 of 13 PageID #: 2487

## 2. Duty to Indemnify

"'Whereas the duty to defend depends only upon the facts as alleged to be, the duty to indemnify, i.e., ultimate liability, depends rather upon the true facts.'" *St. Paul Fire and Marine Ins. Co. v. Torpoco*, 879 S.W.2d 831, 835 (Tenn. 1994) (quoting *Am. Policyholders' Ins. Co. v. Cumberland Cold Storage Co.*, 373 A.2d 247 (Me. 1977)). Thus, "to determine whether there is a duty to indemnify, the true facts, rather than the facts as they are alleged in the complaint, must be ascertained." *Standard Const. Co., Inc. v. Maryland Cas. Co.*, No. 01-2006V, 2002 WL 1477886, at *12 (W.D. Tenn. May 15, 2002). If there remain genuine issues of material fact in the underlying litigation, the duty to indemnify cannot be decided on a motion for summary judgment. *Id.* (citing *Torpoco*, 879 S.W.2d at 834-35).

Defendants argue that if no duty to defend arises out of the GLI or Umbrella Policies, it necessarily follows that no duty to indemnify arises either. (Doc. No. 66 at 11.) Case law from district courts in this Circuit support Defendants' argument. *See, e.g., Cincinnati Ins. Co. v. Grand Pointe, LLC*, No. 1:05-cv-161, 2006 WL 1806014, at *9 (E.D. Tenn. June 29, 2006) (holding that there was no duty to indemnify because the underlying claims did not potentially fall within the parameters of the insurance policy at issue, and thus, even if proven true, they would not trigger a duty to indemnify); *Standard Const. Co., Inc.*, 2002 WL 1477886, at *5 ("It logically follows therefore that if there is no duty to defend, there is no duty to indemnify.").

Accordingly, because the Policies do not give rise to a duty to defend against the NRDC Lawsuit, the Court finds that there is no duty to indemnify Interstate for the damages. However, even if the Court did not adopt this blanket rule, the Court would be precluded from determining the indemnification issue at this time because no "true facts" were established in the NRDC Lawsuit. Interstate points to several facts that arose during discovery through depositions and

declarations, and that were cited by the court presiding over the NRDC Lawsuit in an order denying summary judgment. In that order, however, the court only determined that the witness' opposing testimony created genuine issues of material fact that precluded summary judgment. None of the facts that were cited by the court in denying summary judgment were undisputed, and they were certainly not determined to be true. *See Standard Const. Co., Inc.*, 2002 WL 1477886, at *12 (denying summary judgment on indemnification when the underlying litigation settled before factual issues were resolved).

B. *GAIC Liability*

Finally, Defendants argue that GAIC has no obligation to Interstate because it did not issue any insurance policy to Interstate. (Doc. No. 66 at 11.) Interstate admits that the Umbrella Policy was issued by GANY (Doc. No. 79 at 9), but maintains that the GLI Policy was issued by GAIC (Doc. No. 86 at 18). An insured party bears the burden of proving the existence of a policy and that the claim at issue falls within that coverage. *First Am. Nat'l Bank v. Fidelity & Deposit Co. of Maryland*, 5 F.3d 982 (6th Cir. 1993).

This issue is effectively moot, as the Court has found that no liability arises out of either Policy. Thus, even if GAIC issued the GLI Policy, it does not owe coverage to Interstate and is therefore entitled to summary judgment. Nonetheless, the Court agrees that Interstate has not created a genuine dispute of material fact as to whether GAIC issued the GLI Policy. Although the GLI Policy bears a logo for "Great American Insurance Companies," it is clearly denoted that the insurance is provided by American National Fire Insurance Company, predecessor to GANY. (Doc. No. 68-3 at 2.)

Interstate notes that the GLI Policy is attached to Defendants' Statement of Undisputed Material Facts as "Great American Insurance Company Policy." (Doc. No. 86 at 18 n.2.) The

12

Court finds that this label, which Defendants added for identification purposes during the course of this litigation and is not a part of the original insurance contract, is insufficient to refute the actual content of the GLI Policy. Further, as Defendants note, the logo, designation of the insuring company, and Defendants' label for the purposes of this litigation are identical on the Umbrella Policy, and Interstate does not dispute that GANY issued it. Accordingly, under either theory—that no liability arises from the GLI Policy itself or that GAIC did not issue the GLI Policy—the Court **GRANTS** summary judgment in favor of GAIC.

## IV. Conclusion

For the reasons stated herein, Defendants' Motion for Summary Judgment is **GRANTED**. The Court **DECLARES** that Defendants Great American Insurance Company and Great American Insurance Company of New York, f/k/a American National Fire Insurance Company, do not owe coverage to Interstate for the NRDC Lawsuit, and they are hereby **DISMISSED** as defendants to this action.

It is so ORDERED.

Entered this the 13th day of March, 2012.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT