IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| INTERSTATE PACKAGING COMPANY, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) ) ) ) | CASE NO. 3:11-0589<br>JUDGE NIXON/KNOWLES<br>JURY DEMAND |
| CENTURY INDEMNITY COMPANY, et al., | ) ) ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court upon Plaintiff's "Motion to File Amended and Supplemental Complaint." Docket No. 104. Plaintiff has filed a supporting Memorandum of Law (Docket No. 105) and a proposed "First Amended and Supplemental Complaint for Declaratory Judgment and for Damages" (Docket No. 104-1). Four Defendants, or sets of Defendants, have filed Responses in opposition to the Motion. Docket Nos. 112, 113, 114, 115. Plaintiff has filed a Reply to Defendants' Responses. Docket No. 122.

More than eight months after the above briefing was complete, Plaintiff filed a Motion for Leave to File a Supplemental Brief in Support of the instant Motion. Docket No. 146. That Motion for Leave has been denied in a separate Order (Docket No. 158), and the Court will decline to consider the proposed supplemental brief.

The background information regarding the instant action has been set forth in Judge

Nixon's Order that granted Motions for Summary Judgment filed by two Defendants, Great American Insurance Company ("GAIC") and Great American Insurance Company of New York (formerly known as American National Fire Insurance Company) ("GANY"). Docket No. 88. Briefly and generally, Plaintiff manufactures packaging, labels, bags, and pouches for customers in the food and beverage, health and beauty, textile, household product, and pet product industries in Tennessee. On October 28, 2009, several Plaintiffs, including Natural Resources Defense Counsel, Inc., filed suit against Plaintiff in this Court ("NRDC Lawsuit"). The Complaint in the NRDC lawsuit alleged that Interstate had disposed of waste containing trichloroethylene and perchloroethylene at a landfill owned and operated by the City of Dickson, Tennessee, in the 1970's and 1980's.[1]

Interstate filed the instant action in state court in May 2011 against nine insurance companies, seeking damages and a declaratory judgment that Defendants were obligated to defend Interstate in the NRDC lawsuit, and that Defendants "possessed coverage" for any loss incurred as a result of that lawsuit. Docket No. 1-1. The case was removed to this Court on June 17, 2011. Docket No. 1

In its Complaint, Plaintiff recognized that at least some (and perhaps all) of the insurance policies sued upon contained a coverage exclusion for the discharge of toxic chemicals, but that exclusion did not apply if the discharge was "sudden and accidental." The language of the GAIC policy, which is typical of the language of the other policies that Plaintiff quoted in its Complaint, provides an exclusion for which "this insurance shall not apply." Docket No. 1-1, p.

---

[1] The NRDC Plaintiffs subsequently settled their claims, and the NRDC lawsuit was dismissed in November 2011.

9. Thus, the GAIC policy contains an exclusion for:

>bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxins chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutant into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

*Id.*

On December 5, 2011, GAIC and GANY filed a Motion for Summary Judgment, arguing that the damages sought in the NRDC lawsuit were excluded, because the discharge, dispersal, release, or escape of the contaminants or pollutants was not sudden and accidental. Docket No. 65. Plaintiff argued that GAIC and GANY were not entitled to summary judgment, stating, "The pollution exclusion does not apply because the actions of [Plaintiff] fall within the 'sudden and accidental' acts exception." Docket No. 86, p. 2. As discussed above, Judge Nixon granted that Motion in an Order entered March 14, 2012. Docket No. 88. Judge Nixon essentially determined in his summary judgment Order that GAIC and GANY had no duty to defend Interstate or to indemnify Interstate because the discharges, disposals, releases or escapes that were the subject of the NRDC lawsuit were not sudden or accidental.

Approximately two weeks after Judge Nixon's summary judgment Order was entered, Defendants American Casualty Company and Continental Casualty Company filed a Motion for Summary Judgment on the same grounds. Docket No. 94.

Approximately one month thereafter, on April 11, 2012, Plaintiff filed a "Motion for Reconsideration of the Court's Order on Summary Judgment [Doc. No. 88] or in the Alternatively, for Certification of State Law Questions to the Tennessee Supreme Court."

3

Docket No. 99. That Motion is pending before Judge Nixon.

On April 20, 2012, Plaintiff filed the instant Motion to Amend. Docket No. 104.

According to the instant Motion:

> This proposed Amended and Supplemental Complaint supplements the original Complaint so that it reflects the settlement of the underlying lawsuit upon which this case is based. Further, the proposed Amended and Supplemental Complaint amends the original Complaint by doing the following: (1) deleting one named Defendant (Great American Insurance Company, incorrectly named as Great Western Insurance Company), (2) clarifying certain identifying information of the Defendants as provided in their responses to the original Complaint, and (3) indicating that Interstate Packaging is pursuing alternative theories of relief concerning the coverage as it applies to the claims made in the underlying case.

Docket No. 104, p. 1-2.

Neither the instant Motion nor the supporting Memorandum, however, specifically identifies what "alternative theories of relief" Plaintiff is pursuing. It does, however, state that Plaintiff:

> Is pursuing alternative theories of relief concerning the coverage as it applies to the claims made in the underlying case, *which theories of relief are relevant to the Great American Defendants' Motion for Summary Judgment, Interstate Packaging's Motion for Reconsideration of the Court's Order granting that Motion* and CNA and Continental's Motion for Summary Judgment.

Docket No. 105, p. 3 (emphasis added).

The supporting Memorandum also states:

> The proposed amendments do not contain new causes of actions, but are simply intended to clarify the basis for Interstate Packaging's existing causes of action *in light of the Court's Order granting the Great American Defendants' Motion for Summary Judgment and CNA and Continental's Motion for Summary Judgment.*

4

*Id.*, p. 4 (emphasis added).

With virtually no explanation, Plaintiff avers that it "has not unduly delayed in seeking leave to amend its Complaint." Docket No. 105, p. 4. Plaintiff further avers that Defendants will not be unduly prejudiced if Plaintiff is permitted to amend its Complaint. *Id*. At the same time, however, the supporting Memorandum states "[Plaintiff's] Motion for Reconsideration is based in part on the alternative theories of relief [Plaintiff] seeks to introduce through its proposed Amended and Supplemental Complaint." *Id.*, p. 6. Thus, it is beyond question that Plaintiff seeks to attack Judge Nixon's summary judgment Order, at least in part, by means of the instant Motion to Amend.

In their Responses to the instant Motion, Defendants first argue that the instant Motion is untimely under the Case Management Order, which established March 14, 2012, as the deadline for filing Motions to amend the pleadings. Docket No. 112, p. 3-6. The instant Motion was filed more than a month later, on April 20, 2012. Docket No. 105. Defendants argue that, under Rule 16(b), the Court can allow the amendment only if the moving party demonstrates "good cause." In fact, Rule 16(b)(4) provides, "A schedule [in a scheduling order] may be modified only for good cause and with a judge's consent." Good cause is measured by the movant's "diligence in attempting to meet the case management order's requirements." *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003) (citation omitted). In order to show good cause, the movant must demonstrate that, despite its diligence, it could not meet the original deadline. *Id*. at 907. As the *Leary* Court stated, "Once the scheduling order's deadline passes, a plaintiff first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)." *Id*. at 909 (citations omitted). The

5

Rule is designed to ensure that "at some point both the parties and the pleadings will be fixed." *Id*. at 906 (quoting Advisory Committee Notes).

Defendants argue that Plaintiff has made no attempt to address the issue of good cause, and that the instant Motion must be denied. Defendants further argue that Plaintiff cannot show good cause because the proposed amendments to the Complaint are based on information that has been available to Plaintiff for months or even years. Docket No. 112, p. 5.

With regard to Plaintiff's proposed alternative theories, Defendants argue:

> [Plaintiff's] alternative theory of relief, as set forth in its First Amended and Supplemental Complaint for Declaratory Judgment and for Damages [Doc. No. 104-1] is that the underlying "NRDC Plaintiffs did not allege that any disposal by Interstate at the Dickson County landfill constituted a discharge, dispersal, release or escape of any sort of irritant, contaminant or pollutant," the exact language of the pollution exclusion at issue. . . . In effect, Interstate's "new" theory is that this case is not about "pollution" as the allegations of the underlying NRDC Complaint only alleged there was a "disposal" of contaminants and not a "discharge, dispersal, release or escape" of contaminants at the Dickson County landfill – so the pollution exclusion doesn't apply. *Regardless of the merit of this argument, it was available to Interstate from the inception of this litigation – so it cannot be the basis for allowing an untimely amendment.*

Docket No. 114, p. 2-3 (emphasis added).

Finally, Defendants argue that all Defendants will be prejudiced if the Court allows the amendment. Four Defendants filed Motions for Summary Judgment prior to the filing of the instant Motion to Amend. Two of those Motions have already been granted, while the other two remain pending. It also appears that Judge Nixon's reasoning in his summary judgment Order is a basis for all remaining Defendants to be dismissed from this action.

In its Reply, Plaintiff contends that Rule 16 and its requirement of "good cause" is not

6

applicable in the case at bar. Plaintiff argues in part:

> Plaintiff's motion is not untimely as alleged by Defendants. For the most part, Defendants have relied upon the hyper-technical argument that the deadline set in the Case Management Order for freely allowing amendments has expired. . . . Rule 16 only comes into play when modification of a scheduling order is necessary in order to permit a proposed amendment to a pleading because the deadline has expired. . . . In such cases, the party seeking to amend must show "good cause" for *modifying* the scheduling order before a Court will consider the proposed amendment. . . . Here, as further set forth below, the Case Management Order permits amendments to pleadings after March 14, 2012, upon a showing of "good cause" for the *amendment* itself, not for a modification to the scheduling order . . . .
>
> . . .
>
> Contrary to Defendants' contention, [Plaintiff] has not set forth the incorrect standard governing its Motion because the Case Management Order permits amendments to pleadings after March 14, 2012, where there is "good cause" for the *amendment*. . . . Rule 16, on the other hand, requires a showing of "good cause" for *modifying* the scheduling order to permit the amendment . . . .
>
> Under the current Case Management Order, this Court can entertain motions to amend submitted after March 14, 2012, without the party further requesting a modification of the Order.

Docket No. 122, p. 2-3 (citations omitted) (italics in original).

With all due respect, it is Plaintiff which is relying upon a "hyper-technical argument," not Defendants. Defendants' arguments are quite simple. The Initial Case Management Order states in relevant part, "The deadline for filing Motions to amend the pleadings shall be March 14, 2012, unless leave of Court is obtained for good cause shown." Docket No. 73, p. 9. Plaintiff implies that the deadline set in the Case Management Order for "freely allowing amendments" has not expired. There is, however, no "deadline" in the Case Management Order for "freely allowing amendments." Instead, there is a "deadline" of March 14, 2012, "for filing

7

Motions to amend the pleadings . . . ."

Plaintiff wishes to read the operative language of the Case Management Order to mean that the deadline for filing Motions to amend the pleadings is March 14, 2012, unless leave of Court *for filing the amendment itself* is obtained for good cause shown. The more logical reading of the language, however, is that the deadline for filing Motions to amend the pleadings is March 14, 2012, unless leave of Court *for filing a Motion to Amend after March 14, 2012,* is obtained for good cause shown.

Under Plaintiff's theory, the March 14, 2012, "deadline" is simply rendered inoperative, and any party can filed a Motion to Amend at any time (if they can show good cause for the filing of the amendment). This is certainly not what the Court intended when it entered the Case Management Order. Additionally, Fed. R. Civ. P. 16(b)(3)(A), which is headed in part "Required Contents," states in relevant part, "The scheduling order must limit the time to . . . amend the pleadings . . . ."

Moreover, "good cause" is a concept specifically referenced in Rule 16. The words "good cause," however, are nowhere to be found in Rule 15. Thus, it makes no sense to condition the allowance of an amendment upon a showing of good cause. It makes imminent sense, however, to condition a modification of the March 14, 2012, deadline for filing Motions to amend the pleadings on a showing of good cause.[2]

While Plaintiff did not address the issue of good cause in its Motion or supporting Memorandum, it makes a belated attempt to do so in its Reply. Plaintiff argues in part as

---

[2] Even if the Court were to accept Plaintiff's reading of the Case Management Order, Plaintiff has failed to show good cause for filing the amendment itself.

follows:

> [I]f this Court were to determine [that the instant Motion] is not timely under the Case Management Order [Plaintiff] submits good cause exists to permit the proposed amendments . . . In this case, Defendants gladly accepted for many years [Plaintiff's] premium dollars for insurance. The purpose of insurances to insure against a loss. . . . Yet when faced with a valid claim each of Defendants offered a bogus excuse for refusing to provide the insurance coverage for which [Plaintiff] had paid: Specifically, they relied upon the pollution exclusion, which [Plaintiff] now asserts does not apply to this case. Because they all denied coverage based upon this exclusion, Defendants initially led [Plaintiff] to believe that the only issue in this case was whether the "sudden and accidental" exception to the exclusion applied to provide coverage. When Defendants now claim that [Plaintiff] has no excuse for not having presented in its argument that the pollution exclusion does not apply, they fail to acknowledge that it was Defendants who first claimed that the exclusion did apply. Therefore, Defendants are seeking to profit from their own misleading communications to their insured, Interstate Packaging.
>
> Further, the need for the proposed amendments, which only refine [Plaintiff's] legal theories and do not add claims, became apparent after the Court granted the Great American Defendant's Motion for Summary Judgment on the basis of the pollution exclusion.

Docket No. 122, p. 4-5 (citations omitted).

Simply put, Plaintiff's arguments do not show good cause for modifying the scheduling order to permit the filing of the Amended Complaint. Plaintiff's claim that Defendants somehow misled it is not persuasive. Plaintiff was obviously fully aware of the provisions of the insurance policies at the time it filed the Complaint, which quotes a number of the insurance policies. Plaintiff obviously could have stated in its Complaint whatever claims it wished to make based upon the policy language.

Furthermore, Plaintiff certainly knew Defendants' position when GAIC and GANY filed their Motion for Summary Judgment on December 5, 2011. Plaintiff offers no explanation for

9

why it did not assert its theory that there was a "disposal" of contaminants and not a "discharge, dispersal, release or escape" of contaminants in its Complaint or in its Response to the Motion for Summary Judgment.

It is obvious that Plaintiff was content with its original Complaint until Judge Nixon granted GAIC and GANY summary judgment. As discussed above, it appears that most or all of Defendants may be dismissed from this action on the same theory that there was no sudden and accidental discharge. The Court agrees with Defendants that the instant Motion "is an improper attempt under the guise of an 'amendment' to evade the Court's summary judgment ruling on central issues in this case." Docket No. 112, p. 2. But, Plaintiff is not entitled to a second bite at the apple.

Thus, the Court concludes that Plaintiff has not shown good cause for modifying the scheduling order to permit the filing of a Motion to Amend more than a month after the deadline set forth in the Case Management Order. Defendants have further shown that they will be prejudiced by such a modification.

For the foregoing reasons, Plaintiff's Motion to File Amended and Supplemental Complaint" (Docket No. 104) should be DENIED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this

Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. Clifton Knowles
United States Magistrate Judge