IN THE UNITED STATES DISTRICT COURT
THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| INTERSTATE PACKAGING COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 3:11-cv-00589 |
| | ) | Judge Nixon |
| v. | ) | Magistrate Judge Knowles |
| | ) | |
| CENTURY INDEMNITY COMPANY, et al., | ) | JURY DEMAND |
| | ) | |
| Defendants. | ) | |

## ORDER

Pending before the Court is Plaintiff Interstate Packaging Company's Motion to File Amended and Supplemental Complaint ("Motion" or "Motion to Amend") (Doc. No. 104), filed with a Memorandum in Support (Doc. No. 105). On January 22, 2013, Magistrate Judge Knowles issued a Report and Recommendation ("R&R"), recommending that Plaintiff's Motion be denied. (Doc. No. 159.) Plaintiff filed Objections to the R&R (Doc. No. 165), to which several Defendants filed Responses (Doc. Nos. 168; 170; 172; 173.) For the reasons below, the Court **ADOPTS** the R&R and **DENIES** Plaintiff's Motion.

**I. BACKGROUND**

    A. *Factual Background*[1]

        1. Underlying Litigation

Interstate Packaging Company ("Interstate" or "Plaintiff") manufactures packaging, labels, bags, and pouches for customers in the food and beverage, health and beauty, textile, household product, and pet product industries in Tennessee. (Doc. No. 1-1 at 3.) On October

---

[1] All facts in this section are undisputed and are taken from Plaintiff's Response to certain Defendants' Statement of Undisputed Material Facts (Doc. No. 79), unless otherwise noted.

1

28, 2009, Natural Resources Defense Council, Inc., Beatrice Holt, and Sheila Holt-Orsted ("NRDC Plaintiffs") filed suit against Interstate in this District ("NRDC Lawsuit"). The Complaint in the NRDC Lawsuit ("NRDC Complaint") alleged that Interstate disposed of waste containing trichloroethylene ("TCE") and perchloroethylene ("PCE") at a landfill owned and operated by the City of Dickson, Tennessee, in the 1970s and 1980s.

The NRDC Plaintiffs claimed that the TCE and PCE contaminated the Holts' drinking well and the subsurface of their property. They further claimed that members of the Holt family had experienced serious health problems that they believed were related to their long-term exposure to the contaminated water supply. The NRDC Plaintiffs sought an order requiring various defendants, including Interstate, to investigate the extent of contamination, remediate the present contamination, and abate future contamination. The NRDC Plaintiffs subsequently settled their claims, and the NRDC Lawsuit was dismissed in November 2011.

    2. Insurance Policies

The Defendants are insurers who—at various points relevant to the underlying litigation—insured Plaintiff. Plaintiff's insurance policies with Defendants each contained an identical exclusion to coverage for injury or property damage caused by the insured's polluting activities. Specifically, the policies exclude from coverage:

> bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, tonic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

(Doc. No. 1-1 at 4.) Defendants declined to defend or indemnify Plaintiff against the NRDC Lawsuit, on the basis that the NRDC Complaint alleged polluting activities that were excluded

2

from coverage, and did not fall within the "sudden and accidental" exception to the exclusion. (*See, e.g.*, Doc. No. 1-5 at 637.) Defendants' denial of coverage precipitated the instant case.

*B. Procedural History*

Plaintiff filed the instant action in the Chancery Court of Dickson County on May 18, 2011, seeking a declaratory judgment that coverage for the NRDC Lawsuit exists under the policies. (Doc. No. 1-1.) Plaintiffs allege generally that Defendants wrongfully denied insurance coverage for the damages alleged in the NRDC Lawsuit and that Defendants are liable for the policy limits, along with damages for their failure to defend and indemnify. (*Id.*) Defendants removed the action to this Court on June 17, 2011, on the grounds of diversity jurisdiction. (Doc. No. 1.)

Defendants Great American Insurance Company ("GAIC"), and Great American Insurance Company of New York ("GANY"), filed a Motion for Summary Judgment on December 5, 2011 (Doc. No. 65), which the Court granted on March 14, 2012. (Doc. No. 88.) The Court held that the exclusions contained in Plaintiff's insurance policies applied to bar coverage for the claims as alleged in the NRDC Lawsuit. (*Id.* at 10.) The Court therefore found that neither policy gave rise to a duty to defend or to indemnify. (*Id.* at 10–11.) The Court held, in the alternative, that it could not find a duty to indemnify when no "true facts" had been determined in the NRDC Lawsuit prior to the suit's settlement. (*Id.* at 12.) Finally, the Court held that even if the policies gave rise to a duty to defend to indemnify, GAIC was entitled to summary judgment because Plaintiff did not create a genuine dispute of fact as to whether GAIC, rather than GANY, issued either policy. (*Id.*)

Less than three weeks after the Court's summary judgment Order was entered, Defendants American Casualty Company ("ACC") and Continental Casualty Company ("CCC")

filed a Motion for Summary Judgment on the same grounds as the earlier motion. (Doc. No. 94.) Two days later, on April 11, 2012, Plaintiff filed a Motion for Reconsideration of the Court's Order on Summary Judgment or in the Alternative, for Certification of State Law Questions to the Tennessee Supreme Court. (Doc. No. 99.) On April 20, 2012, Plaintiff filed the instant Motion to Amend (Doc. No. 104), with a Memorandum in Support (Doc. No. 105). Defendants filed Responses in Opposition to the Motion to Amend on May 4, 2012 (Doc. Nos. 112–115), to which Plaintiff filed a Reply on May 11, 2012 (Doc. No. 122). Magistrate Judge Knowles issued the R&R on January 22, 2013 (Doc. No. 159), to which Plaintiff filed Objections on February 5, 2013 (Doc. No. 164). Defendants filed Responses to the Objections on February 19, 2013 (Doc. Nos. 168; 170; 172; 173), to which Plaintiff filed a Reply on February 28, 2013. (Doc. No. 177-1).

## II. JUDGE KNOWLES'S REPORT AND RECOMMENDATION

In his R&R, Judge Knowles explains that Plaintiff seeks to amend and supplement the original Complaint—in relevant part—in order to "[indicate] that [Plaintiff] is pursuing alternative theories of relief concerning the coverage as it applies to the claims made in the underlying case." (Doc. No. 159 at 4 (citing Doc. No. 104 at 1–2).) The R&R explains that Plaintiff hopes to pursue "alternative theories of relief relevant to" this Court's prior Order granting summary judgment to Defendants GANY and GAIC, and relevant to the pending Motion for Reconsideration and the remaining Defendants' motions for summary judgment. (*Id.* (citing Doc. No. 105 at 3).)

Judge Knowles has recommended denying Plaintiff's Motion to Amend for several reasons. First, Judge Knowles found the Motion untimely. (Doc. No. 159 at 5–9.) The Scheduling Order in this case set a deadline of March 14, 2012, for motions to amend the

pleadings. (Doc. No. 73 at 9.) Plaintiff's Motion to Amend (Doc. No. 104) was not filed until April 21, 2012, more than one month after the deadline passed, and only after the Court granted summary judgment to two Defendants. Judge Knowles rejected Plaintiff's argument that the Scheduling Order required only good cause for an amendment after the deadline, rather than a showing of good cause for filing the Motion to Amend after the deadline. (Doc. No. 159 at 6–8.)

Second, Judge Knowles found that Plaintiff did not show "good cause" for modification of the Scheduling Order, as required under Federal Rule of Civil Procedure 16. (*Id.* at 8–10.) Specifically, Judge Knowles rejected Plaintiff's argument that its prior counsel was "misled" by Defendants into mistakenly believing that this case turned on the "sudden and accidental" exception to the pollution exclusion. (*Id.* at 9.) Judge Knowles reasoned that "Plaintiff was obviously fully aware of the provisions of the insurance policies at the time it filed the Complaint," and that "Plaintiff obviously could have stated in its Complaint whatever claims it wished to make based upon the policy language." (*Id.*) Finally, Judge Knowles concluded that the reasons proffered by Plaintiff for seeking to amend the Complaint were unavailing, and that ultimately the Motion to Amend was "an improper attempt under the guise of an 'amendment' to evade the Court's summary judgment ruling on the central issues in this case." (*Id.* at 10 (quoting Doc. No. 112 at 2.)

### III. LEGAL STANDARDS

Federal Rule of Civil Procedure 16(b)(4) permits modification of scheduling orders "for good cause and with consent of the judge." The Sixth Circuit prescribes two relevant considerations for a determination of good cause. First, the movant must establish that the existing schedule order "cannot reasonably be met despite the diligence" of that party. *Leary v.*

5

*Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003) (citation omitted). Second, the court must consider "whether the opposing party will suffer prejudice by virtue of the amendment." *Id*.

If a movant shows good cause for a modification to the scheduling order, the Court then must determine whether an amendment should be permitted under Rule 15. *See* Fed. R. Civ. P. 15. Rule 15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice so requires." Again, the Sixth Circuit suggests factors for the Court to consider when entertaining a motion to amend, including: 1) "the delay in filing, 2) the lack of notice to the opposing party, 3) bad faith by the moving party, 4) repeated failure to cure deficiencies by the previous amendments, 5) undue prejudice to the opposing party, and 6) futility of the amendment." *Miller v. Admin. Office of the Courts*, 448 F.3d 887, 898 (6th Cir. 2006) (citation omitted).

Under Rule 72(b) and Local Rule 72.03(b), after considering a party's written objections to a report and recommendation, the district judge shall make a de novo determination of any part of the report and recommendation that was properly objected to. Fed. R. Civ. P. 72(b)(3). The District Judge "may accept, reject, or modify, in whole or in part, the recommended disposition" of the magistrate judge. *Id.*

## IV. PLAINTIFF'S OBJECTIONS TO THE R&R

The Court proceeds by describing Plaintiff's Objections to the R&R and Defendants' various Responses, before analyzing the R&R and Plaintiff's Motion to Amend.

*A. Plaintiff's Objection for Failure to Find Good Cause for Modification*

Plaintiff first objects to Judge Knowles's finding that Plaintiff did not show good cause for modification of the Scheduling Order to permit an untimely Motion to Amend. (Doc. No. 165 at 5.) Plaintiff argues that "the proposed amendments do not contain new causes of action, but are simply intended to clarify the basis for [Plaintiff's] existing causes of action in light of

6

the Court's [previous summary judgment order.]" (*Id.*) Plaintiff proposes amending the Complaint to plead that this case does not depend just on whether there was a "sudden and accidental" discharge of pollutants, but also whether the NRDC's allegation of "disposal" is actually excluded from coverage under the exclusion for "discharge, dispersal, release or escape." (*Id.* at 6.)

With respect to its delay in raising this theory, Plaintiff argues that the Defendants "misled" Plaintiff and its former counsel into focusing on the "sudden and accidental" exception, rather than the issue of coverage for "disposal," and further that this theory did not come to Plaintiff's attention until after the Court entered summary judgment in favor GANY and GAIC. (*Id.* at 7.) Plaintiff asserts that "while Defendants now claim that Interstate Packaging has no excuse for not having presented its argument that the pollution exclusion does not apply, they fail to acknowledge that it was Defendants who first claimed that the exclusion *did* apply," and further that "prior counsel simply missed the issue due to the Defendants' representations in their letters denying coverage." (*Id.* at 10–11.) Plaintiff goes so far as to claim that "Defendants are seeking to profit from their own misleading communications to their insured." (*Id.* at 10.)

Plaintiff also contends that it exercised diligence and did not delay in seeking modification of the Scheduling Order. (*Id.* at 9.) Plaintiff points out that its Motion to Amend was filed several months prior to the deadlines for discovery and dispositive motions in the case, leaving "an abundance of time" for the parties to conduct discovery and prepare dispositive motions. (*Id.* at 10.) Plaintiff asserts that it has been proactive in attempting to remedy the mistake by obtaining new counsel and filing the Motion to Amend within approximately one

7

month of the Court's summary judgment order and the deadline for amending the pleadings. (*Id.*)

### B. Plaintiff's Objection for Failure to Consider Lack of Prejudice to Defendants

Plaintiff next contends that Judge Knowles erred by not considering whether Defendants would actually be prejudiced by allowing Plaintiff to amend the Complaint and, not surprisingly, offers several reasons why Defendants would not be prejudiced. (*Id.* at 12.) First, Plaintiff asserts that it is not adding any new claims and that its proposed amendments are meritorious. (*Id.* at 13.) Plaintiff argues that the amended complaint would simply "require [Defendants] to address one additional legal argument in their summary judgment motions," reiterating that it merely "seeks to assert the alternative legal theory that the pollution exclusion does not apply to allegations of 'disposal' at all." (*Id.* at 13–14.) Plaintiff argues that the proposed amendment would require no additional discovery, because whether "disposal" implicates the pollution exclusion is a purely legal issue. (*Id.* at 14.) Next, Plaintiff argues that Defendants will not be prejudiced by the proposed amendments because, under the current Scheduling Order, there is still sufficient time to conduct discovery and prepare dispositive motions.[2] (*Id.* at 15.) Plaintiff argues that because Defendants have "resisted" additional discovery efforts and filed a motion to stay discovery, that they will not be prejudiced by the potential of duplicative discovery efforts. (*Id.*)

Finally, Plaintiff argues that Defendants have not been prejudiced with respect to their pending motions for summary judgment. (*Id.* at 16–17.) Plaintiff asserts that the Sixth Circuit has never held that entry of summary judgment alone is a sufficient basis to deny an amendment.

---

[2] Currently, the discovery deadline in this case is April 15, 2013, and the dispositive motions deadline is September 1, 2013.

8

(*Id.* at 17.) Plaintiff further argues that the pendency of its Motion for Reconsideration cuts in favor of allowing an amendment to the Complaint. (*Id.* at 18.) Plaintiff's rationale appears to be that because the Court has not yet ruled on the Motion for Reconsideration, amending the Complaint to include theories presented in that motion would not prejudice Defendants.[3] Finally, Plaintiff argues that this Court's grant of summary judgment to the GANY and GAIC was interlocutory and not a final judgment because of the presence of other Defendants, and that therefore the Court should be amenable to revising its earlier ruling. (*Id.* at 19.)

*C. Plaintiff's Objection for Failure to Consider the Unique Circumstances of this Case*

Finally, Plaintiff alleges that Judge Knowles erred by failing to consider the "circumstances of this case and the very limited nature of the amendment Interstate Packaging seeks to make." (*Id.* at 21.) Plaintiff argues that under the Federal Rule of Civil Procedure 15(b)(1), parties should be granted latitude to amend the pleadings when doing so will aid in presenting the merits of the case and will not prejudice defendants. (*Id.* at 22.) Plaintiff reasserts that it seeks only to alter its legal theory of recovery and asserts that Defendants have been unable to present "any case that has refused an amendment under circumstances such as those present in this case." (*Id.* at 23.) Plaintiff concludes that if the Court denies the instant Motion, Plaintiff "will be denied the opportunity to fully present its claims on the merits, which is antithetical to the interests of justice." (*Id.* at 25.)

## V. DEFENDANTS' RESPONSES TO PLAINTIFF'S OBJECTIONS

Because several Defendants filed a Responses to Plaintiff's Objections (Doc. Nos. 168; 170; 172; 173), the Court will summarize them generally and collectively, but notes that each has been fully considered for purposes of deciding the instant Motion.

---

[3] Defendants have, however, already responded to the Motion for Reconsideration.

Defendants assert that Plaintiff's Objections raised for the first time the argument that Plaintiff's prior counsel missed crucial issues. (Doc. No. 168 at 2–3.) Defendants argue that this does not meet the "good cause" requirement for the untimely filing of the Motion to Amend, and further that this Court should not consider arguments not made before Judge Knowles. (*Id.*) Further, Defendants dispute Plaintiff's claim that Judge Knowles failed to consider the issue of prejudice to Defendants. (*Id.* at 3.) Defendants specifically cite to the portion of the R&R in which Judge Knowles states: "Defendants have further shown that they will be prejudiced by such a modification [to the Scheduling Order]." (Doc. No. 159 at10.) They further assert that the Court is not required to consider prejudice as a second prong of the Rule 16 analysis if Plaintiff first fails to meet the "good cause" requirement. (Doc. No. 168 at 8.)

The Response from Defendants Century Indemnity Company ("CIC") and ACE Fire Underwriters Insurance Company ("ACE") also challenges Plaintiff's assertion that it was misled by Defendants' letters denying coverage. (Doc. No. 173.) CIC and ACE cite the language of the letter sent to Plaintiff, which—in explaining the why the pollution exclusion applies—states in relevant part: "a review of the [NRDC] allegations demonstrate[s] that [Plaintiff] . . . routinely disposed of TCE and PCE . . . over a significant number of years. Nowhere in the allegations is there any reference to either a 'sudden' or 'accidental' discharge of contaminants." (*Id.* at 5–6 (citing Doc. No. 1-5 at 637).) Thus, Defendants argue, Plaintiff was on notice that Defendants believed the "disposal" of contaminants triggered the exclusion and that the "sudden and accidental" exception did not apply. (*Id.*)

Beyond those matters, Defendants largely reiterate and endorse the findings and conclusions of Judge Knowles. Defendants reiterate that the Motion to Amend was untimely under the Scheduling Order and that Plaintiff has not shown good cause for modifying the order.

(Doc. No. 170 at 2.)  Specifically, Defendants argue that Plaintiff's arguments regarding its prior counsel being "misled" and "missing issues" fall short of good cause because the theory has always been available to Plaintiff.  (*See Id.* at 6.)  Instead, Defendants assert that Plaintiff is asking for nothing more than a "do over."  (*Id.*)

Finally, Defendants argue that allowing the amendment would result in "clear prejudice." (Doc. No. 170 at 2.)  Defendants assert that they have "incurred substantial costs" in preparing motions directed at the original Complaint, and that if a new complaint was permitted, "Defendants will be forced to incur the additional costs of re-starting the entire summary judgment process."  (*See Id.* at 12.)

## VI. ANALYSIS

As an initial matter, the Court agrees entirely with Judge Knowles's determination that the "good cause" requirement from the Scheduling Order clearly refers to good cause for filing a motion to amend after the deadline, rather than good cause for the amendment itself.  (*See* Doc. No. 159 at 6–7; 73 at 9 ("The deadline for filing Motions to amend the pleadings shall be March 14, 2012, unless leave of Court is obtained for good cause shown.").)  Plaintiff's assertion to the contrary is curious.  Certainly Judge Knowles is well-apprised of the meaning of provisions within his scheduling orders.  Thus, the Court proceeds to analyze Plaintiff's untimely filing of the instant Motion to Amend under Rule 16, rather than the more permissive standard of Rule 15.

Before analyzing the case under Rule 16, the Court acknowledges disagreement among the parties about the significance of the prejudice element in Rule 16 analysis.  Plaintiff asserts that Sixth Circuit case law, namely *Leary*, establishes a two-part analysis, in which the Court first determines whether good cause is shown for motion to amend, and then whether Defendants will be prejudiced by the amendment.  (Doc. No. 165 at 7.)  Defendants disagree, asserting that

controlling precedent requires a showing of good cause by Plaintiff, regardless of whether defendant is prejudiced by the amendment. (*See, e.g.,* Doc. No. 170 at 6–7.) Instead, Defendants argue, prejudice "is merely a consideration that informs . . . the 'good cause' requirement" under *Leary*. (*Id.* at 7 (quoting *Korn v. Paul Revere Life Ins. Co.*, 382 F.App'x 443, 449 (6th Cir. 2010).)

Rule 16 states, in relevant part, "[t]he district judge—or a magistrate judge when authorized by local rule—must issue a scheduling order . . . [t]he scheduling order must limit the time to join other parties, amend the pleadings, complete discovery, and file motions . . . ." Fed. R. Civ. P. 16(b). The Rule is designed to ensure that "at some point both the parties and the pleadings will be fixed." Fed. R. Civ. P. 16, 1983 advisory committee's notes. The Rule permits modification to the scheduling order "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Further, a court may modify the scheduling order only if the deadlines "cannot reasonably be met despite the diligence of the party seeking the extension." *Leary*, 349 F.3d at 906 (citing Fed. R. Civ. P. 16, 1983 advisory committee's notes). The Sixth Circuit has linked these two requirements, stating that good cause is measured by the movant's diligence in attempting to meet the deadlines. *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002).

In addition, the *Leary* court concluded that "while prejudice to the defendant is not an express component of Rule 16, it is nonetheless a 'relevant consideration,'" so much so that it "is required" to be considered by a court in determining whether to permit a Rule 16 motion to amend. *Leary*, 349 F.3d at 906, 909. Later, in *Korn*, the Sixth Circuit appeared to clarify the role of the prejudice element in good cause analysis, holding that "prejudice . . . is merely a consideration that informs whether [a plaintiff] has satisfied the 'good cause' requirement." 382 F.App'x at 450. Ultimately then, the Court believes Plaintiff must justify its failure to file a

timely Motion to Amend, independent of the resultant prejudice—or lack thereof—to Defendants. In addition, however, the Court will consider any such prejudice in determining whether the amendment is warranted.

The Court finds that under Rule 16 and the Sixth Circuit's decision in *Leary*, Plaintiff has not shown good cause for modification of the Scheduling Order to permit its Motion to Amend. Plaintiff has not argued that it *could not* through reasonable diligence have previously raised its theory, but merely discusses *why it did not*. Plaintiff acknowledges that its proposed amendment is an effort to advance a different legal theory of recovery than was argued at the summary judgment stage. Plaintiff's only justification for the untimeliness of its motion is that its original counsel "missed" this new theory, because prior counsel was allegedly "misled" by Defendants into focusing solely on the "sudden and accidental" exception. The Court finds this argument simply unavailing.

Plaintiff is the master of the Complaint. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). As Judge Knowles pointed out, Plaintiff knew of Defendants' theories of defense upon the filing of GANY and GAIC's motion for summary judgment in December 2011. (Doc. No. 159 at 9–10.) Moreover, the issues of defense and indemnity ultimately turn on the allegations in the NRDC Complaint, and whether the allegations potentially fall within the pollution exclusion. *See Travelers Indem. Co. of Am. v. Moore & Assocs. Inc.*, 216 S.W.3d 302, 305 (Tenn. 2007). The theory that NRDC Plaintiffs' allegation of "disposal" does not fall within the exclusion for "discharge, dispersal, release, or escape" is a theory that could have been developed by simply comparing the language of the exclusion to the NRDC Complaint, independent of any representations by Defendants. Therefore, that theory has been available to Plaintiff since the NRDC Plaintiffs filed their complaint in 2009.

13

Further, based in part on the language of the CIC and ACE letter denying coverage, the Court rejects Plaintiff's argument that its counsel was "misled" concerning the ultimate issue of the case. (*See* Doc. 1-5 at 467.) It is not Defendants' responsibility to inform the opposition of promising legal arguments. Moreover, there is simply nothing in the language of the letter that appears misleading, deceptive, or untoward. Instead, the letter appears to notify Plaintiff simply that—in the opinion of Defendants—the "disposal" of pollutants alleged by the NRDC Plaintiffs fell within the exclusion to coverage, but did not fall within the exception for "sudden and accidental" "discharge, dispersal, release or escape." Plaintiff's assertions to the contrary are without merit.

To the extent Plaintiff's new theory is viable—which the Court finds doubtful—it is perhaps unfortunate that Plaintiff's prior counsel did not raise it. However, the Court cannot conclude that this failure to raise the theory—or conscious choice not to raise it, as the case may have been—amounts to "good cause" for the purposes of amending the Scheduling Order under Rule 16. A scheduling order should be amended when a party "cannot meet the deadlines despite [its] diligence." *Leary*, 349 F.3d at 906. That standard is simply not satisfied here. It is not that Plaintiff could not have brought this theory before the deadline, it just did not, or chose not to, or in Plaintiff's words, "missed it." Only after this Court ruled that Plaintiff's alleged polluting activities were excluded from coverage did Plaintiff attempt to raise the new theory. That Plaintiff's new counsel would have litigated this case differently than prior counsel—in the Court's view and in the absence of any persuasive case law—does not constitute the "good cause" required to allow an untimely amendment and force defendants to relitigate the case. After all, as at least one Defendant pointed out, such a strategy could be pursued by any unsuccessful litigant.

Finding that Plaintiff has not shown good cause for untimely filing its instant Motion, the Court proceeds to consider prejudice as required under *Leary*. Here, the prejudice to Defendants, while perhaps not onerous, should not be minimized. Whereas the initial briefings focused on the issue of whether Plaintiff's polluting activities were "sudden and accidental," Defendants would be required under the proposed amended complaint to litigate whether the polluting activities were excluded at all. At a minimum, this would require further briefing. And although only two Defendants have obtained summary judgment at this point, several others have filed motions for summary judgment, presumably upon the same legal theories as prevailed in the first such motion. Changing the focus of the litigation from whether alleged polluting activities were sudden and accidental to whether the activities triggered the coverage exclusion at all is not an insignificant change.

Additionally, contrary to Defendants assertions, litigating the new theory would not necessarily be "purely legal." (*See* Doc. No. 165 at 14.) If the Court found the language of the insurance contract was not plain and unambiguous, the parties would be required to present proof of their intent upon entering into the contract, potentially necessitating deposition testimony of witnesses and experts. *See Kiser v. Wolfe*, 353 S.W.3d 741, 747 (Tenn. 2011). The Court acknowledges Plaintiff's argument that the discovery deadline in the case has not lapsed, and agrees that this fact may mitigate the potential prejudice to Defendants from an amended complaint. However, allowing a shift in the focus of the litigation, after the point at which the pleadings were supposed to be fixed, necessarily requires additional expenditure of time and resources by Defendants. Thus, the Court finds that Defendants would be prejudiced by allowing Plaintiff to amend its Complaint.

**VII. CONCLUSION**

For the reasons above, the Court finds that Plaintiff has not shown good cause for amending the Scheduling Order to permit filing of a motion to amend its Complaint. Accordingly, the Court **ADOPTS** Judge Knowles's Report & Recommendation (Doc. No. 159), and **DENIES** Plaintiff's Motion to File Amended and Supplemental Complaint (Doc. No. 104).

It is so ORDERED.

Entered this the __28th____ day of March, 2013.

_____
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT