IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| INTERSTATE PACKAGING COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 3:11-cv-00589 |
| | ) | Judge Nixon |
| v. | ) | Magistrate Judge Knowles |
| | ) | |
| CENTURY INDEMNITY COMPANY, et al., | ) | JURY DEMAND |
| | ) | |
| Defendants. | ) | |

## ORDER

Pending before the Court is Plaintiff Interstate Packaging Company's ("Plaintiff" or "Interstate") Motion for Reconsideration of the Court's Order on Summary Judgment or, in the Alternative, for Certification of State Law Questions to the Tennessee Supreme Court ("Motion") (Doc. No. 99), filed with a Memorandum in Support (Doc. No. 100). Defendants Great American Insurance Company ("GAIC") and Great American Insurance Company of New York ("GANY"), f/k/a American National Fire Insurance Company ("Defendants"), filed a Response in Opposition. (Doc. No. 109.) For the reasons given below, Plaintiff's Motion is **DENIED**.

**I. BACKGROUND**

    *A. Factual Background*[1]

        1. <u>Underlying Litigation</u>

Interstate manufactures packaging, labels, bags, and pouches for customers in the food and beverage, health and beauty, textile, household product, and pet product industries in

---

[1] All facts in this section are undisputed and are taken from Plaintiff's Response to Defendants' Statement of Undisputed Material Facts (Doc. No. 79) unless otherwise noted.

1

Tennessee. (Doc. No. 1-1 at 3.) On October 28, 2009, Natural Resources Defense Council, Inc., Beatrice Holt, and Sheila Holt-Orsted ("NRDC Plaintiffs") filed suit against Interstate in this District ("NRDC Lawsuit"). The Complaint in the NRDC lawsuit ("NRDC Complaint") alleges that Interstate disposed of waste containing trichloroethylene ("TCE") and perchloroethylene ("PCE") at a landfill owned and operated by the City of Dickson, Tennessee, in the 1970s and 1980s.

The NRDC Plaintiffs claim that the TCE and PCE contaminated the Holts' drinking well and the subsurface of their property. They further claim that members of the Holt family have experienced serious health problems that they believe are related to their long-term exposure to the contaminated water supply. The NRDC Plaintiffs sought an order requiring various defendants including Interstate to investigate the extent of contamination, remediate the present contamination, and abate future contamination. The NRDC Plaintiffs subsequently settled their claims, and the NRDC Lawsuit was dismissed in November 2011.

2. Insurance Policies

In 1982, Interstate was issued an insurance policy numbered XO 3-82-71-32 that provided comprehensive general liability insurance for the period of May 1, 1982, through May 1, 1983 ("GLI Policy"). The parties dispute whether GANY or GAIC issued the GLI Policy, and Defendants deny that GAIC issued any general liability policy to Interstate at any time.

Paragraph 13 of the GLI Policy states that the insurer "will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . 'bodily injury' or 'property damage' . . . to which this insurance applies, caused by an 'occurrence.'" The GLI Policy defines "bodily injury" as "bodily injury, sickness or disease

sustained by any person which occurs during the policy period, including death at any time resulting therefrom." It defines "property damage" as:

> (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an "occurrence" during the "policy period."

Exclusion F of the GLI Policy bars coverage for "'bodily injury' or 'property damage' arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water." However, Exclusion F does not apply if "such discharge, dispersal, release or escape is sudden and accidental."

GANY issued Interstate an umbrella insurance policy numbered PRO 3-70-22-36 that provided coverage for the period of May 1, 1982, through May 1, 1983 ("Umbrella Policy"). Under the Umbrella Policy, GANY agreed to "pay on behalf of the insured the ultimate net loss in excess of the underlying limit or retained limit which the insured shall become legally obligated to pay . . . for damages because of . . . 'personal injury' or 'property damage' . . . caused by or arising out of an 'occurrence' happening anywhere." "Personal injury" is defined as "bodily injury, sickness, disease or disability, including death at any time arising therefrom" and also includes "false arrest, detention or imprisonment, malicious prosecution, wrongful entry or eviction." The Umbrella Policy defines the term "property damage" identically as the GLI Policy. Exclusion G of the Umbrella Policy provides the same bar to coverage as Exclusion F of the GLI Policy, and similarly does not apply to bar coverage if "such discharge, dispersal, release or escape is sudden and accidental."

3

*B. Procedural History*

Interstate filed the instant lawsuit in the Chancery Court of Dickson County, Tennessee, on May 18, 2011, against several insurance companies. (Doc. No. 1-1.) Defendants removed the action to this Court on June 17, 2011, on the grounds of diversity jurisdiction. (Doc. No. 1.) Relevant to the instant Motion, Interstate alleged that GANY and GAIC wrongfully denied insurance coverage for the damages alleged in the NRDC Lawsuit. (*Id.* at 6.) Interstate sought a declaratory judgment that coverage for the NRDC Lawsuit exists under the policies that Defendants issued to it and that Defendants are liable for the policy limits, along with damages for their failure to defend and to indemnify. (*Id.*)

The Court granted summary judgment in favor of GAIC and GANY on March 14, 2012. (Doc. No. 88.) The Court held that the Exclusions contained in the GLI Policy and the Umbrella Policy ("Policies") applied to bar coverage for the claims alleged in the NRDC Lawsuit. (*Id.* at 10.) The Court therefore found that neither policy gave rise to a duty to defend or a duty to indemnify. (*Id.* at 10–11.) The Court held, in the alternative, that it could not find a duty to indemnify when no "true facts" had been determined in the NRDC Lawsuit prior to its settlement. (*Id.* at 12.) Finally, the Court held that even if the Policies gave rise to a duty to defend or a duty to indemnify, Defendant GAIC was entitled to summary judgment. (*Id.* at 12–13.) The Court found that Plaintiff had not established a genuine dispute of fact as to whether GAIC, rather than GANY, issued either policy. (*Id.*)

Plaintiff filed the instant Motion for Reconsideration April 11, 2012 (Doc. No. 99), with a Memorandum in Support (Doc. No. 100), and numerous attached cases (Doc. Nos. 100-1 to 100-19). Defendants filed a Response in Opposition (Doc. No. 109) on April 30, 2012, with an attached exhibit (Doc. No. 109-1). On April 20, 2012, Plaintiff filed a Motion to File Amended

4

and Supplemental Complaint. (Doc. No. 104.) Plaintiff argued that amending the Complaint was necessary, in part, to present a new theory of recovery relevant to the instant Motion. (Doc. No. 105 at 3.) On January 22, 2013, Magistrate Judge Knowles entered a Report and Recommendation recommending that the Motion to File an Amended and Supplemental Complaint be denied. (Doc. No. 159.) This Court has adopted the report and denied Plaintiff's motion to amend in a separate Order to be entered contemporaneously with this Order.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 60(b) gives district courts discretion to relieve a party from a final judgment, order, or proceeding for several reasons, including:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud . . . , misrepresentation, or misconduct by an opposing party;
> . . . or
> (6) any other reason that justifies relief.

Rule 60(b) "does not provide relief simply because litigants belatedly present new facts or arguments after the district court has made its final ruling." *Jinks v. AlliedSignal, Inc.*, 250 F.3d 381, 387 (6th Cir. 2001) (citation omitted).

Rule 60(b)(6) "should be used only in exceptional or extraordinary circumstances." *Pierce v. United Mine Workers of Am. Welfare & Ret. Fund for 1950 & 1974*, 770 F.2d 449, 451 (6th Cir. 1985) (citation omitted). Exceptional circumstances are "unusual and extreme situations where principles of equity *mandate* relief." *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990) (emphasis in original). A claim of simple legal error is subsumed in the category of mistake under Rule 60(b)(1); thus, "a claim of legal error, unaccompanied by

extraordinary or exceptional circumstances, is not cognizable under Rule 60(b)(6)." *Pierce*, 770 F.2d at 451.

Rule 59(e) also provides for motions to alter or amend a court's judgment. Such a motion "may be granted if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice." *GenCorp v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999) (internal citations omitted). On a motion for reconsideration, a party may not "simply . . . reargue its prior position in the hope that the court will change its mind." *Al-Sadoon v. FISI\*Madison Fin. Corp.*, 188 F. Supp. 2d 899, 902 (M.D. Tenn. 2002).

## III. ANALYSIS

Plaintiff asserts that relief is justified, and the Court must necessarily reconsider its Order granting summary judgment in favor of GAIC and GANY, because other defendants in this case have now filed similar motions for summary judgment. (Doc. No. 100 at 4.) Plaintiff also moves for reconsideration on the grounds of clear error of law and to prevent manifest injustice. (*Id.*)

### A. GAIC Liability

In its Order granting summary judgment to Defendants ("Order"), the Court agreed with Defendant GAIC that Plaintiff did not create a genuine dispute of material fact as to whether GAIC issued the GLI policy in this case. (Doc. No. 88 at 12–13.) The Court determined that this was an alternative ground for granting summary judgment to GAIC and dismissed GAIC as a party to this action. (*Id.* at 13.) In its Motion, Plaintiff requests that the Court reconsider its Order granting summary judgment to both GAIC and GANY. (Doc. No. 99 at 1.) However, neither Plaintiff's Motion (Doc. No. 99), nor the attached Memorandum (Doc. No. 100), present

6

any argument as to why the Court should reconsider its Order as to the issue of whether GAIC issued the relevant insurance policy to Plaintiff.  Thus, the Court treats that argument as waived and finds that it did not clearly err in dismissing Defendant GAIC as a party to this action.  The Court **DENIES** the Motion to Reconsider on this issue and **AFFIRMS** its dismissal of Defendant GAIC.

   *B.  Duty to Defend*

Plaintiff argues that the Court erred in holding that the GLI and Umbrella Policies do not give rise to a duty to defend.  (Doc. No. 100 at 12.)  In its Order, the Court reasoned that the allegations of polluting activity in the NRDC Complaint were covered by Exclusions F and G of the Policies, and that the exception to the Exclusions for "sudden and accidental" pollution did not apply because the NRDC Complaint alleged deliberate and continuous disposal of contaminated waste as part of Plaintiff's normal operations.  (Doc. No. 88 at 10.)

Plaintiff argues that the Court construed the allegations of the NRDC Complaint too narrowly, because the NRDC Plaintiffs were not required to allege whether any polluting acts were "sudden and accidental" in order to state a cause of action.  (Doc. No. 100 at 12.)  Plaintiff further asserts that the Court erred in refusing to consider extrinsic evidence that Plaintiff developed through discovery, relating to the duty to defend.  (Doc. No. 100 at 18.)  Finally, Plaintiff argues that the Court construed the scope of the policies' pollution exclusions too narrowly and overlooked allegations that support applying the "sudden and accidental" exception.  (Doc. No. 100 at 22.)

The Court first analyzes what evidence should be considered in determining the existence of a duty to defend.   Plaintiff admits that, under the "four-corners rule" of Tennessee law that the Court followed in its Order, a duty to defend is determined solely by the allegations

7

contained in the underlying complaint. (*Id.* at 18.) However, Plaintiff argues that the Court should have followed decisions of the Tennessee Court of Appeals propounding circumstances where additional facts may be considered. (*Id.* at 19.) The Court finds that its application of the four-corners rule was not a clear error. The two cases that Plaintiff cites are not particularly persuasive, as one is over forty years old and the other is an unpublished opinion. (*See id.* at 18–19 (citing *Tenn. Farmers Mut. Ins. Co. v. Brown*, No. 01-A-01-9005CH00177, 1990 WL 177338 (Tenn. Ct. App. Nov. 16, 1990); *Dempster Bros., Inc. v. U.S. Fid. & Guar. Co.*, 388 S.W.2d 153 (Tenn. Ct. App. 1964)).) Most importantly, the Tennessee Supreme Court has more recently, repeatedly, and clearly, stated the rule that the duty to defend "is to be determined *solely* by the allegations contained in the complaint." *See St. Paul Fire & Marine Ins. Co. v. Torpoco*, 879 S.W.2d 831, 835 (Tenn. 1994) (emphasis in original) (citation and quotation omitted); *Travelers Indem. Co. of Am. v. Moore & Assocs. Inc.*, 216 S.W.3d 302, 305 (Tenn. 2007); *Clark v. Sputnik's, LLC,* 368 S.W.3d 431, 439 (Tenn. 2012). Following the rule as stated by the highest state court is not clearly erroneous, and the Court declines to reconsider its ruling on that point.

The Court therefore turns to Plaintiff's arguments regarding the allegations contained in the NRDC Complaint. Plaintiff urges the Court to follow a case from the Western District of Arkansas holding that a duty to defend cannot be delineated solely by the allegations of the underlying complaint when the facts relevant to coverage would not be the same as those relevant to the underlying cause of action. (Doc. No. 100 at 15–16.) Plaintiff argues that because the allegations in the NRDC Complaint "do not preclude the possibility that that NRDC Plaintiffs' alleged injuries were caused in part by 'sudden and accidental' pollution occurrences," there is a possibility that the alleged pollution included "sudden and accidental" occurrences, and a duty to defend therefore exists under the favorable legal standard. (*Id.* at 13.) Plaintiff

8

concludes that the "allegations of contamination should be read broadly and construed to potentially include 'sudden and accidental' occurrences." (*Id.* at 17.)

Plaintiff also cites the Sixth Circuit in *Ray Industries, Inc. v. Liberty Mutual Insurance Company*, 974 F.2d 754 (6th Cir. 1992), for the proposition that "long term activities could still cause sudden or accidental damage." (Doc. No. 100 at 22.) However, the court there agreed with the First Circuit that "mere speculation under these circumstances that any individual instance of disposal, including leaks, occurred 'suddenly' cannot contradict a reasonable reading of the allegations that the entire pattern of conduct was not a 'sudden and accidental occurrence.'" *Ray Indus.*, 974 F.2d at 769–70 (quoting *A. Johnson & Co. v. Aetna Cas. and Sur. Co.*, 933 F.2d 66, 75 (1st Cir. 1991)). This is the case here, as Plaintiff offers only mere speculation regarding what allegations in the NRDC Complaint might have implicated "sudden and accidental" occurrences of pollution.

This Court declines to follow the holding of the case from the Western District of Arkansas. The "four corners rule" is settled law in Tennessee, and it was not error for the Court to apply it. On the face of the NRDC Complaint, there was no indication that any of the claimed pollution occurred "suddenly and accidentally," according to the ordinary meaning of those terms. Instead, all of the allegations referenced deliberate and continuous polluting acts. Therefore, under the plain terms of the insurance contract, and the "four corners rule," Defendant GANY had no duty to defend Plaintiff against the claims of the NRDC Plaintiffs. The Court **DENIES** the Motion to Reconsider on the issue of duty to defend and **AFFIRMS** the grant of summary judgment as to Defendant GANY's duty to defend Plaintiff in the underlying NRDC Lawsuit.

    C. *Duty to Indemnify*

### 1. No True Facts

In its Summary Judgment Order, the Court held that Defendants were entitled to summary judgment on the grounds that no "true facts" had been established in the underlying NRDC Lawsuit that would trigger a duty to indemnify. (Doc. No. 88 at 11–12.) The Court cited *Standard Constr. Co., Inc.*, 2002 WL 1477886, at *12, for its proposition that courts should deny summary judgment on the duty to indemnify where the underlying suit settles before relevant factual issues are resolved. (Doc. No. 88 at 11.) Rather than apply the case in that way however, the Court cited the case as support for its grant of summary judgment to Defendants. (Doc. No. 88 at 11.) Upon reconsideration, the Court finds the *Standard Construction* case to be inapposite on this particular point. Where facts relevant to the insurer's duties are not develop in the underlying case, *Standard Construction* counsels that summary judgment should be denied, rather than granted. Thus, the Court clearly erred in holding that the absence of "true facts" from the underlying litigation served as an alternative ground for grant of summary judgment to Defendants. However, as explained below, the Motion to Reconsider will be denied on other grounds.

### 2. The "Blanket Rule"

In its Order, the Court agreed with Defendants that if there is no duty to defend, there is also no duty to indemnify. (Doc. No. 88 at 11.) Plaintiff argues that Defendants had a duty to indemnify it for the NRDC Lawsuit, and that "the parties did not previously provide the Court with sufficient guidance on this point." (*Id.* at 5.) Plaintiff now argues that it was error for the Court's Order to rely only on other district court decisions, because their holdings were not supported by other case law or Tennessee authority. (*Id.*) Plaintiff contends that (1) one Tennessee Court of Appeals case indicates that Tennessee courts would reach the opposite

10

conclusion, (2) the Sixth Circuit has indicated that the two duties can be mutually exclusive, and (3) courts in other jurisdictions have determined that there can be a duty to indemnify when there is no duty to defend. (*Id.* at 6–9.)

The Court applied the so-called "blanket rule" as its rationale for granting summary judgment on the duty to indemnify. (Doc. No. 88 at 11.) The blanket rule requires that, where the Court determines there is no duty to defend, it must also determine that there is no duty to indemnify. In applying the rule, the Court relied principally on unpublished cases from other federal district courts in Tennessee, as well as Tennessee case law holding that "the duty to defend is broader than the duty to indemnify." *See Drexel Chem. Co. v. Bituminous Ins. Co.*, 933 S.W.2d 471, 480 (Tenn. Ct. App. 1996). Citing that premise, the U.S. District Court for the Western District of Tennessee extrapolated that because the duty to defend is broader than the duty to indemnify, "it logically follows therefore that if there is no duty to defend, there is no duty to indemnify." *Standard Const. Co., Inc.*, 2002 WL 1477886, at *5. As noted in this Court's Order, the U.S. District Court for the Eastern District of Tennessee applied the blanket rule in *Cincinnati Insurance Co. v. Grand Pointe, LLC*, No. 1:05-CV-161, 2006 WL 1806014, at *9 (E.D. Tenn. June 29, 2006). There, the court found that in order to conclude that there was no duty to defend, it had to first find that the allegations in the complaint did not even potentially come within the parameters of the insurance coverage. *Id.* Therefore, the court reasoned, a finding of no duty to defend required that it also find no duty to indemnify. *Id.*

Plaintiff admits that Defendants cited the cases on which the Court relied and Plaintiff did not respond (Doc. No. 100 at 5), and that Tennessee courts have not clearly addressed this issue (*id.* at 6). Plaintiff also admits that courts in several other jurisdictions have adopted the blanket rule. (*Id.* at 8.) Because two sister districts have applied the same rule, and because there is no

11

plainly countervailing Tennessee authority, the Court cannot conclude that its holding was a clear error of law. However, upon further consideration, the Court finds it necessary and prudent to acknowledge that the blanket rule is logically flawed and arguably inconsistent with Tennessee case law.

First, and most importantly, application of the blanket rule in Tennessee is suspect because the courts of this state have delineated the duties to defend and indemnify as "separate and distinct." *Planet Rock, Inc. v. Regis Ins. Co.*, 6 S.W.3d 484, 491 (Tenn. Ct. App. 1999) (quotation marks omitted) (quoting *Drexel Chem. Co.*, 933 S.W.2d at 480); *see Blake Indus., Inc. v. Gen. Agents Ins. Co. of Am.*, No. M1999-01891-COA-R3-CV, 2000 WL 1031054, at *6 (Tenn. Ct. App. July 27, 2000) (citing *Jackson Hous. Auth. v. Auto-Owners Ins. Co*. 686 S.W.2d 917 (Tenn. Ct. App. 1984)). The blanket rule undermines this maxim, because it makes the duty to indemnify entirely dependent on courts first finding a duty to defend.

Second, the Supreme Court of Tennessee has stated that determination of the duty to indemnify is not typically appropriate for summary judgment. *St. Paul Fire & Marine Ins. Co.*, 879 S.W.2d at 834 (characterizing determination of the duty to indemnify as a "question for the jury"). This precedent is arguably incompatible with the blanket rule, which requires summary judgment on the issue of duty to indemnify whenever a court finds no duty to defend.

Third, Tennessee courts have held that there is a temporal distinction between determination of the duty to defend and determination of the duty to indemnify. Whereas the duty to defend can be determined the moment a complaint is filed, the duty to indemnify depends on establishment of "true facts" either through discovery, trial, judgment, or settlement. *Id.* at 835. In many cases, the allegations that trigger the duty to defend are never proved, resulting in no duty to indemnify. While this may be the more common scenario, perhaps the opposite can

also be true—that a duty to indemnify can be found based on the facts as they are ascertained during the underlying litigation, even where there is not first a duty to defend based on the allegations in the complaint.  This may be the most fundamental shortcoming of the blanket rule.  It fails to account for the infrequent—yet entirely possible—situation in which there will be no duty to defend based on the allegations in the complaint, but facts established during litigation that show damages coming within the coverage of the policy.

Fourth, the Court observes that the blanket rule is at least partially based on a logical fallacy derived from the insurance-law rule that the duty to defend is broader than the duty to indemnify.  Thus, courts have held, there can be no duty to indemnify where there was not a duty to defend.  *See Standard Consrt. Co., Inc.*, 2002 WL 1477886, at *5.  This position is logically problematic because it requires that one duty can be completely subsumed within the other, which, as noted, is incompatible with the premise that the two are separate and distinct.  A more accurate and supportable construction of the term "broader," in this Court's view, is that the duty to defend is broader simply because it is triggered more easily—through mere allegation—than the duty to indemnify, which requires the allegations be tested and proved true.  *See Travelers Indem. Co.*, 216 S.W.3d at 305 ("The duty to defend is broader than the duty to indemnify because the duty to defend is based on the facts alleged, while the duty to indemnify is based upon the facts found by the trier of fact.").

Finally, the Court notes that the blanket rule has been roundly criticized and rejected by courts in other jurisdictions.  *See Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 254 (5th Cir. 2011) (labeling the blanket rule a "faulty assumption"); *Keystone Consol. Indus., Inc. v. Emp'rs Ins. Co. of Wausau*, 456 F.3d 758, 762 (7th Cir. 2006) (rejecting the "broader than" rationale for the blanket rule); *Grinnell Mut. Reins. Co. v. Reinke*, 43 F.3d 1152, 1154 (7th Cir.

13

1995) ("because of the possibility that the legal theory of the underlying suit may change, a conclusion that the insurer need not defend does not imply that in need not indemnify"); *Admiral Ins. Co. v. Little Big Inch Pipeline Co. Inc.*, 523 F. Supp. 2d 524, 546 (W.D. Texas 2007) (finding no duty to defend but declining to apply blanket rule where "[i]t remains possible . . . that facts may later be . . . proven at trial which establish [a duty to indemnify]").

For the reasons above, although the Court cannot find that application of the blanket rule was clear error of law, the Court does have serious doubts about the rule and its compatibility with Tennessee law, and will be reluctant to apply it in similar cases going forward.

### 3. Plaintiff's Failure to Link its Liability to the Underlying Settlement

Regardless of any uncertainty about the correctness of the blanket rule, the Court finds that even if it were not applied, Defendant GANY would still be entitled to summary judgment because Plaintiff has failed to create a genuine issue of material fact as to whether its liability in the NRDC Lawsuit was premised on any "sudden and accidental" occurrence. Plaintiff argues that summary judgment on the issue of indemnity is not typically appropriate until the underlying case has resolved. (Doc. No. 100 at 10.) Plaintiff is correct in this assertion, but curiously fails to acknowledge that, here, the underlying case had already been resolved before Defendants moved for summary judgment.

Interstate was dismissed as a party to the NRDC Lawsuit on November 15, 2011, after entering into a settlement agreement with the NRDC Plaintiffs. *See Natural Res. Def. Council v. Cnty. of Dickson, Tenn. et. al.*, No. 3:08-cv-00229 (M.D. Tenn. Nov. 15, 2011) (order dismissing Plaintiff pursuant to settlement agreement). In its Response to Defendants' Motion for Summary Judgment—filed approximately three months after Plaintiff was dismissed from the NRDC Lawsuit—Plaintiff asserted that discovery in the underlying case revealed proof of two "discrete

14

events" that it argued fall within the "sudden and accidental" exception and are therefore covered by the Policies. (Doc. No. 86 at 12.) These events were (1) "the alleged disposal of a 55 gallon drum that may have contained PCE" and (2) "the disposal by an unknown employee of a paper towel dipped in PCE and used to clean an item of clothing." (*Id.*) Plaintiff further asserted that this proof "confirms that Interstate's liability was not the result of continuous activity . . . but certain discrete acts of employees contrary to management's instructions and policies." (*Id.* at 17–18.) However, aside from this single statement, Plaintiff has offered no evidence of a connection between the alleged "discrete events" and its settlement with the NRDC Plaintiffs. Neither Plaintiff's Response to Defendants' Motion for Summary Judgment nor Plaintiff's Motion for Reconsideration contain any discussion of the basis for Plaintiff's liability in the underlying settlement agreement. The Court has not been presented with the settlement agreement itself, documentary evidence related to the settlement agreement, or affidavits from participants in the settlement negotiations. Moreover, the court in the underlying case—in an order denying Interstate's motion for summary judgment—referred to depositions of several Interstate employees who testified to polluting activities occurring as part of Plaintiff's normal course of business. *Natural Res. Def. Council,* 2011 WL 8214, at *10 (M.D. Tenn. January 3, 2011). Thus, contrary to Plaintiff's empty assertion, its liability could have been premised on more than just the two supposed "discrete events." Yet Plaintiff simply fails to present any evidence of the basis for its liability. The Court cannot find a genuine dispute of material fact exists regarding Defendants' duty to indemnify based solely on Plaintiff's bald assertion that its liability was premised on two discrete polluting events that may come within the "sudden and accidental" exception. Thus, even if the blanket rule were not applied, Plaintiff's claim must

15

fail. Accordingly, the Court **DENIES** the Motion to Reconsider and **AFFIRMS** its grant of summary judgment to Defendant GANY.

## IV. CONCLUSION

The Court finds that it did not clearly err in determining that Defendants GANY and GAIC have no duty to defend or to indemnify Plaintiff. Further, the Court did not clearly err in dismissing GAIC as a party to this suit. The Court did err in granting summary judgment on grounds that no "true facts" were developed in the underlying case. However, because the error supported only an alternative ground, Defendants remain entitled to summary judgment and Plaintiff's Motion is **DENIED**.

It is so ORDERED.

Entered this the 29th day of March, 2013.

_____
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT